## COMMONWEALTH *vs.* PATRICK H. HURLEY.

Worcester.     October 2, 1893. — October 20, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Intoxicating Liquors — Illegal Keeping for Sale — Agency.*

At the trial of a complaint for unlawfully keeping for sale intoxicating liquors with intent unlawfully to sell the same, it appeared that the building in question was occupied by the defendant in part as a hotel and in part as a drug store, the latter being on the first floor, and the former on the floors above; and that a door opened from the store into a hall in which were stairs leading up to the next floor. There was evidence showing the presence of liquors in the store; that, upon the appearance of officers to search the premises, a signal was

given by the hotel clerk; that they found in one room of the hotel a man who had been in the defendant's employ, and another man standing at a table holding a bottle containing whiskey in one hand, and a tumbler with a coin, either a quarter or half dollar, in the other hand; that they also found another bottle containing whiskey in a closet in this room; and that they further found in an adjoining room three bottles which had contained whiskey, and several glasses smelling of whiskey, and also empty lager beer bottles and cases in other places in the hotel. *Held,* that the judge rightly refused to rule that there was no evidence to warrant a finding that the whiskey found in the room in question was kept there for sale by the defendant.

At the trial of a complaint for unlawfully keeping for sale intoxicating liquors with intent unlawfully to sell the same, the defendant is not entitled to ask for a specific instruction that there is no evidence that a person was the agent of the defendant to sell or keep for sale liquors found in a certain room upon his premises where such person was present, but it is a question for the jury, upon all the evidence in the case, whether the fact of such agency is proved.

COMPLAINT for unlawfully keeping for sale intoxicating liquors, with intent unlawfully to sell the same, on December 29, 1892, at Worcester. Trial in the Superior Court, before *Maynard, J.,* who allowed a bill of exceptions, in substance as follows.

The evidence tended to show that the defendant was a licensed innholder on the day alleged, keeping a hotel with about fifty rooms in it, and also an apothecary store, the latter being on the floor level with the street, and the hotel being on and above the next floor. The office was on the floor next above the street floor, and there were two stories above that used for the guests and boarders at the hotel, besides other rooms used in connection with the hotel. A flight of stairs led directly from the street to the hotel.

On the afternoon of the day alleged in the complaint, several police officers went with a warrant to search the place for liquors. Two of them went into the apothecary store, from which a door opened into the hall or entry in which were the stairs leading up to the next or office floor. Three of the officers went upstairs, two of them stopping at the office, and the third one went up the stairs to the next floor above the office.

One of the officers told the hotel clerk, who was in the office, that they had come to search the premises, and thereupon the clerk went to the electric bell-board in the office and pressed one of the buttons; and the officer testified that he pressed the button numbered twelve, and that, at the same time, he made some kind of a gesture or signal, as though to some person upstairs,

who could see him down the light-shaft.    The clerk testified that he pressed button numbered nineteen, and not twelve, the two numbers being next to each other, and about two inches apart, and did it to call the porter, whom he supposed to be in room nineteen, to take his place in the office, while he went with the officers to show them about the premises.    The officer testified that the porter came, and the clerk did go with them and opened the rooms for them.    The clerk, and others of the defendant's witnesses, testified that the bell in room twelve could not at that time be rung from the office, the electric apparatus being out of order.

There were a dozen or fifteen men sitting in the office, or rooms connected with it.    The officer who went directly up to the floor above the office testified that, as soon as he got to the top of the stairs, he saw one Martel, who had on a white duck frock, come out of room twelve, in which he saw a light, and go past the light-shaft, and stop and look down it, and then pass down the stairs ; that at the same time he heard a bell ring in back, but he could not tell whether it was in room twelve or not ; that he immediately went into that room and saw a man standing at a small table holding a bottle in one hand and a tumbler in the other, and having also in the hand with the tumbler a coin, either a quarter or a half dollar ; that the officer seized the bottle and the tumbler ; that the bottle, which would hold three half-pints, was about half full of whiskey ; that he found in a closet in the room another bottle of the same shape and size, which contained a small quantity of whiskey ; and that in this room, besides the man who had the bottle in his hand, were one McNamara sitting near the table, and another man sitting on the bed.

The defendant's evidence tended to contradict the officer, as to taking the bottle and tumbler out of the man's hands, and to show that he took both off the table where they stood.

Martel was a clerk of the defendant in his apothecary store, and had nothing to do with the hotel ; and the defendant's evidence tended to show that he had been sent for to take a plaster up to McNamara, who was ill, and had gone up with the plaster and applied it to McNamara, and had been in the room a few minutes for that purpose only.    The defendant was not upon the premises when Martel went upstairs to room twelve, and had not

been before that afternoon, but he returned to the drug store some time after Martel went upstairs, and when the officers came in.

McNamara testified that he had worked for the defendant prior to October 13, 1892, as watchman, and had thereafter worked at another business, but boarded at the defendant's hotel; that in November he was taken sick, and had done no work since; that he had occupied several different rooms in the hotel, and had moved into room twelve about two weeks before the search, because it was more easily warmed than the others, and was boarding there, occupying that room, and paying for it by the week; that the whiskey in the two bottles referred to was given to him by a friend, one Cohen, on December 20, and he had used it; and that the doctor had prescribed whiskey for him. The doctor who attended him on December 23 and 26 in room twelve and Cohen were called as witnesses by the defendant; the former testified to the serious illness of McNamara, and that on December 23 he had prescribed whiskey for him, but did not remember whether he ever saw any whiskey there or not; and the latter to the fact that he gave him two bottles of whiskey at the times stated, corresponding to the bottles found there.

The officers continued their search and found in room thirteen three bottles which had contained whiskey, and several glasses smelling of whiskey. This room was next to room twelve, and there was a door opening between them. McNamara testified that he had nothing to do with room thirteen, and the door, so far as he knew, was locked between them.

The defendant's hotel clerk testified that the whiskey bottles in room thirteen were brought there by guests who occupied it the night before, and who came with a satchel, and sent to the dining-room for the glasses, which were sent to them at the room. No hotel register was put in evidence to show that any one occupied room thirteen the night before.

The officers also found in two or three other rooms, and in one closet in a hallway, empty boxes or cases, such as are used for putting in bottles of lager beer, and in one of these cases empty lager beer bottles.

In respect to these cases and bottles, the defendant's hotel clerk testified that they were cases and bottles which had been brought there from outside by guests who occupied rooms in the

house, and had been used by them in their rooms, and had not been furnished by the defendant in any manner.

The officers testified that they questioned the defendant, at the time of the search, about his liquors in the apothecary store; that he told them he had about twenty gallons of alcohol, and ten gallons of other liquors; that they thought that was not an improper amount for legitimate purposes in connection with the apothecary store, and made no search for liquors in the store, and took none away; and that during several weeks before the search they had seen large numbers of men go in and out of the defendant's hotel, at various times of the day and evening, and had seen some come out in an intoxicated condition.

The defendant's evidence tended to show that his rooms were well filled with guests, both permanent boarders and transient guests.

The defendant asked the judge to instruct the jury as follows:

" 1. There is no evidence in this case to warrant a finding that the whiskey found in room twelve was kept there for sale by the defendant.

" 2. There is no evidence to show that Martel, or McNamara, or any other person found in or near room twelve, was the agent of the defendant to sell or keep for sale the liquor found in said room, or any liquor."

The judge declined to give these instructions, and instructed the jury as follows: " Was the liquor kept there for sale? For instance, in room twelve where this liquor was found? Was that kept there for sale? That you must decide by drawing a fair inference from the evidence before you. If it was kept there for sale, was it kept by this defendant? If the liquor was brought up there from the drug store, and was for sale, with the knowledge and consent of the defendant, it being his goods, he would be liable for it. If it was brought up from the drug store by Martel for sale without the knowledge, consent, and instructions of the defendant, he would not be responsible for it. These matters you have to get at by drawing inferences, fair and reasonable, from all the circumstances which have been placed before you. Thus, if you should find that the liquor was kept there for sale by McNamara as an agent of the defendant in making sales, or should conclude from all the circumstances of the case or find

that it was kept for sale by Martel, so that the doing of that, the sale or keeping it there for sale, was authorized by the defendant, you must decide this from the inferences you draw from the whole evidence, and satisfy yourselves beyond a reasonable doubt."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. Thayer*, (*H. W. Cobb* with him,) for the defendant.

*F. A. Gaskill*, District Attorney, for the Commonwealth.

LATHROP, J.    There was evidence in the case from which the jury might properly have found that the charge against the defendant contained in the complaint was proved.    This charge was that of unlawfully keeping intoxicating liquors at Worcester, with intent unlawfully to sell the same.    The charge was not confined to a single room in a house, but was a general charge, and was broad enough to cover the building occupied by the defendant in part as an hotel and in part as a drug store.    Evidence was admitted, without objection, showing the presence of liquors in the drug store, the means of access from this store to the upper part of the hotel, the giving of a signal by the hotel clerk upon the appearance of the officers, the presence of intoxicating liquors in a room of the hotel numbered twelve, with some evidence that a sale had taken or was about to take place there, and the finding of other bottles which had contained liquor and glasses in an adjoining room, and of empty lager beer bottles and cases in other places in the hotel.    All this was competent on the issue in the case; and we are of opinion, that there was evidence that the liquor found in room twelve was kept there for sale.

As to the other ruling requested, there was evidence that Martel was the defendant's clerk in the drug store.    McNamara testified that he had worked for the defendant, but that this relation had ceased.    It was for the jury to say how far they believed him, and how far his testimony was consistent with the testimony for the government.    The jury may well have found, on all the evidence in the case, that he was a servant of the defendant at the time in question.    Whether there was evidence that he or Martel was the agent of the defendant to sell or keep for sale liquors found in a particular room in the hotel, was not a

matter on which the defendant was entitled to ask specific instructions. If either of them was his servant, and was guilty of selling intoxicating liquor, this was evidence from which the jury might find that the sale was authorized by the defendant. *Commonwealth* v. *Briant*, 142 Mass. 463, and cases cited.

The instructions given appear to us to be correct.

*Exceptions overruled.*